906 So.2d 363 (2005)
Alvin MYLOCK, Appellant,
v.
CHAMPION INTERNATIONAL and Sedgwick Claims Management, Appellees.
No. 1D04-2326.
District Court of Appeal of Florida, First District.
July 18, 2005.
*364 T. Rhett Smith and Teresa E. Liles of T. Rhett Smith, P.A., Pensacola, for Appellant.
Roderic G. Magie, Pensacola, for Appellees.
ERVIN, J.
In this workers' compensation appeal, claimant Alvin Mylock challenges the order of the judge of compensation claims (JCC) denying his petition for attorney fees, entered on the ground that his attorney failed to secure for him any medical benefits in his earlier filed claim.[1] Because we disagree with the judge's conclusion that appellant was not entitled to fees for the reason that appellees Champion International and Sedgwick Claims, the employer/carrier (E/C), never de-authorized claimant's treating physician, we reverse the denial and remand with directions that the JCC award claimant's counsel a reasonable fee for services performed in achieving the re-authorization of claimant's physician.
While claimant was being treated for his work-related injury, the E/C, on October 10, 2003, forwarded a letter to claimant's counsel informing him that, pursuant to section 440.13(2)(d), Florida Statutes (2003), it was transferring the care of claimant from his authorized physician, Dr. Mangieri, to that of his "replacement physician," Dr. Spruill, because an independent medical examination (IME) disclosed that claimant was not making appropriate progress under Dr. Mangieri.[2] The letter also scheduled an appointment with Dr. Spruill. On October 23, 2003, claimant filed a petition for benefits seeking the continued authorization of Dr. Mangieri. Thereafter, on October 31, 2003, the E/C replied by letter that it did not intend to de-authorize Dr. Mangieri, who remained claimant's physician. Four days thereafter, the carrier filed a formal reply to the petition, again referring to its rights under section 440.13(2)(d), to transfer the care of an injured employee to a health-care provider, if the IME confirmed that the employee was not making adequate progress. The next event occurred on November 18, 2003, when a mediation conference was held, and a report thereafter filed, agreeing that all pending issues had been resolved, including Dr. Mangieri's authorization, and a medical bill paid. Thereafter, claimant's counsel submitted a petition for attorney fees based on his asserted successful prosecution of the medical benefits claim on behalf of Mr. Mylock.
In denying the application for fees, the JCC interpreted the communications from the E/C to claimant to be, at most, only an "intention" to de-authorize the attending physician at some future point in time, and concluded they could not be construed as conveying a present intent to "de-authorize," which term, he noted, the E/C had never used. In so deciding, the judge emphasized that the carrier had never informed Dr. Mangieri of any intention *365 to transfer the employee to another physician's care, nor was there any evidence that Dr. Mangieri had at any time denied claimant treatment. The judge apparently considered the lack of communication to claimant's attending physician critical to a determination of claimant's entitlement to attorney fees. In support of his decision, the JCC cited Pardo v. Denny's, Inc., 631 So.2d 388 (Fla. 1st DCA 1994), wherein this court concluded that because the carrier had not notified a physician of claimant's request for medical services within 21 days after the filing of same, the carrier was required to pay claimant's attorney fees, pursuant to section 440.34(3)(b), Florida Statutes (1989),[3] despite its direct notification to the attorney of the authorization within 21 days after its receipt of the notice of claim.
To the extent the judge's order turned on a resolution of the facts, we apply the review standard of competent, substantial evidence; to the extent it involved an interpretation of law, our standard is that of de novo. We cannot agree that the Pardo holding affects the outcome of the present case. The facts in Pardo, involving an injured employee's request for medical care, as authorized by section 440.13(2)(a), are far different from those at bar, involving, under section 440.13(2)(d), a carrier's attempt to transfer care from an attending health-care provider with whom the employee had expressed no dissatisfaction. In the former situation, the necessity for expedited consideration is obvious, in that a delay in the provision of services, as recognized in Pardo, could have the effect of threatening the worker's life. In contrast, the transfer of care from an existing health-care provider to another at the carrier's direction is not ordinarily attended by the same dire consequences.
We find nothing expressly stated or reasonably implied in section 440.13(2)(d) to require that the de-authorization of an attending physician shall occur simultaneously with the carrier's communication. The statute speaks only in terms of the carrier's "right to transfer the care," which reasonably suggests that the transfer may not occur until some time in the future. Thus, based on our construction of the statute, a claimant may prevail on a medical-benefits petition if he or she succeeds in causing the carrier to retract its intention to transfer care, regardless of the timing of the de-authorization. For example, in State Attorney v. Johnson, 770 So.2d 187 (Fla. 1st DCA 2000), this court affirmed a JCC's refusal to approve an E/C's unilateral transfer of medical care, pursuant to section 440.13(2)(d), wherein the carrier advised claimant "that it intended to transfer her care from the authorized doctor with whom she had been receiving treatment." Id. at 188 (emphasis added).
It is true, as the JCC found, that the letter of October 31, 2003, may have had the effect of, as the JCC phrased it, retracting "its former `implied' de-authorization." If there had been no additional evidence in the record of the E/C's intention, the order of denial would rest on a far more secure foundation. The JCC's order, however, appears to place little importance on the carrier's November 4, 2003, reply to the petition, or on the event that occurred shortly thereafter, i.e., the mediation, at which the parties agreed that Dr. Mangieri would remain authorized. Thus, any uncertainty as to what the carrier may have intended by its earlier letters to claimant's attorney was clarified by its actions beginning on November 4, 2003, and continuing *366 through the mediation, defined as a "method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution." BLACK'S LAW DICTIONARY 1003 (8th ed. 2004). Such a solution was achieved, and, because claimant prevailed on his medical benefits claim, he was entitled to the payment of a fee at the carrier's expense. As this court observed in Mitchell v. Sunshine Companies, 850 So.2d 632, 633 (Fla. 1st DCA 2003):
Rather than proceeding to an evidentiary hearing, the parties participated in mediation and the carrier thereafter agreed to accept the claim. And while this acceptance avoided the necessity of a merits hearing, the attorney's efforts in obtaining the benefits constitutes a successful prosecution of the claim for purposes of an attorney's fee award. Soriano v. Gold Coast Aerial Lift, 705 So.2d 636 (Fla. 1st DCA 1998); see also, e.g., City of Miami Beach v. Schiffman, 144 So.2d 799 (Fla.1962); Smith v. General Parcel Service, 699 So.2d 741 (Fla. 1st DCA 1997).
REVERSED and REMANDED.
PADOVANO and THOMAS, JJ., concur.
NOTES
[1] Section 440.34(3)(a), Florida Statutes, authorizes an award of fees to claimant if he or she prevails on a claim for medical benefits.
[2] The language in the letter generally tracked that in section 440.13(2)(d), which provides: "The carrier has the right to transfer the care of an injured employee from the attending health care provider if an independent medical examination determines that the employee is not making appropriate progress in recuperation."
[3] The statute provided for an award of fees if the carrier failed or refused to pay a compensation claim for which claimant prevailed, within 21 days from its receipt.